Argued and submitted November 22, 1985, reversed and remanded for reconsideration
April 23, 1986

**HOARD,**
*Petitioner,*

*v.*

**EMPLOYMENT DIVISION et al,**
*Respondents.*

(85-AB-627; CA A36086)

717 P2d 664

Michael H. Marcus, Legal Aid Service, Portland, argued the cause and filed the brief for petitioner.

Michael D. Reynolds, Assistant Attorney General, Salem, waived appearance for respondent Employment Division.

Richard C. Hunt, Francis T. Barnwell, and Spears, Lubersky, Campbell, Bledsoe, Anderson & Young, Portland, filed the brief for respondent Gelco Pony Express.

Before Richardson, Presiding Judge, and Warden and Warren, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

This case is before us a second time on review of the Employment Appeals Board, which has twice affirmed a referee's order denying unemployment compensation benefits to petitioner, who was discharged because he was involved in a traffic accident while driving his employer's vehicle. The issue is whether he was discharged for misconduct connected with his work.

In the first review, *Hoard v. Employment Division,* 72 Or App 688, 696 P2d 1168 (1985), we reversed and remanded because the order failed to demonstrate a rational relationship between its findings and conclusion. We said: "Nothing in the referee's decision explains how, given the undisputed fact that petitioner did fail to stop for a red light, the referee concluded that petitioner's act was a wilful disregard of the employer's interest, as opposed to a good faith error." 72 Or App at 691. We noted that petitioner's alleged inability to recall the event, and thus his credibility, were not issues.

On reconsideration, EAB entered new findings and conclusions which hardly improved on the referee's original order. The pertinent findings are that petitioner, while driving for the employer, ran a red light and was cited for it, that the employer's investigation produced no reason by petitioner for running the red light and that petitioner recalled seeing headlights crossing into the intersection, but did not recall other events leading up to the collision. The core of the decision is this conclusion: "His running a red light resulting in a collision amounts to wilful disregard of the employer's interest."

There is still no explanation of a rational relationship between the findings and the conclusion. As the dissenting EAB member properly notes:

"* * * That he saw headlights does not establish that he saw a red light or a traffic signal and made a conscious decision to drive through it. Certainly the conviction of disobedience to a traffic signal carries no implication as to his mental state, because no mental state at all is necessary to sustain a conviction. Absent the requisite finding of wilfulness, supported by the record and required by rule, a disqualification is not appropriate."

Given the inadequacy of EAB's second order, the real issue before us is whether the order should be reversed and EAB instructed to order compensation, *see Lively v. Employment Division,* 68 Or App 46, 680 P2d 391 (1984), or whether EAB should be given another opportunity to explain, if it can, the rationale connecting its findings with its conclusion. EAB's reasoning begins with the apparent major premise that all drivers who enter an intersection know or are presumed to know the color of the traffic signals, unless they offer some reason why they do not. From this major premise, and the minor premises of its findings—that petitioner was a driver who entered an intersection and that he provided no plausible reason why he did not at the time know the status of the controlling traffic signals—EAB could infer that petitioner knew that he was violating the traffic laws in disregard of his employer's interest. If we were convinced that that is the only possible rationale for the conclusion, we would simply reverse with instructions to order compensation, because the unstated major premise is not (and we believe could not be) supported by the record or by any rule of law.

However, because EAB has the primary responsibility to decide the issue, we are reluctant to make a final determination that a conclusion is substantively wrong when procedural inadequacies prevent us from discovering how the conclusion was reached. Accordingly, we remand for reconsideration.

Reversed and remanded for reconsideration.